**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| MARIA L. QUEVEDO, | ) | No. CV 13-6146-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 26, 2013, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 27, 2013, and November 1, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 13, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on August 2, 1947.  [Administrative Record ("AR") at 75-77.]  She has a high school education [AR at 68, 167], and past work experience as, among other things, an accounts payable clerk.  [AR at 46, 58, 68-69, 172-83.]

On February 11, 2011, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that she has been unable to work since March 16, 2010.  [AR at 40, 58, 137-43.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 80-85, 89-95.]  A hearing was held on August 16, 2012, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 52-72.]  A vocational expert ("VE") also testified.  [AR at 68-70.]  On September 11, 2012, the ALJ issued a decision concluding that plaintiff was not disabled.  [AR at 40-47.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 31.]  When the Appeals Council denied plaintiff's request for review on June 25, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-8]; <u>see</u> <u>Sam v. Astrue</u>, 550 F.3d 808, 810 (9th Cir. 2008) (<u>per</u> <u>curiam</u>).  This action followed.

## III.

## <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  <u>Berry v. Astrue</u>, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (same).   When determining whether substantial evidence exists to support the

1   Commissioner's decision, the Court examines the administrative record as a whole, considering
2   adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);
3   see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must
4   consider the entire record as a whole and may not affirm simply by isolating a specific quantum
5   of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is
6   susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,
7   528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,
8   466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the
9   ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

10

11                                                IV.
12                          **THE EVALUATION OF DISABILITY**
13          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
14   to engage in any substantial gainful activity owing to a physical or mental impairment that is
15   expected to result in death or which has lasted or is expected to last for a continuous period of at
16   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.
17   1992).

18

19   **A.      THE FIVE-STEP EVALUATION PROCESS**
20          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
21   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
22   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must
23   determine whether the claimant is currently engaged in substantial gainful activity; if so, the
24   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in
25   substantial gainful activity, the second step requires the Commissioner to determine whether the
26   claimant has a "severe" impairment or combination of impairments significantly limiting her ability
27   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.
28   If the claimant has a "severe" impairment or combination of impairments, the third step requires

1   the Commissioner to determine whether the impairment or combination of impairments meets or

2   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

3   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

4   If the claimant's impairment or combination of impairments does not meet or equal an impairment

5   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

6   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

7   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

8   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

9   prima facie case of disability is established.  The Commissioner then bears the burden of

10  establishing that the claimant is not disabled, because she can perform other substantial gainful

11  work available in the national economy.  The determination of this issue comprises the fifth and

12  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

13  n.5; Drouin, 966 F.2d at 1257.

14  /

15  /

16  /

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28

4

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of her application, February 11, 2011.  [AR at 42.]  At step two, the ALJ concluded that plaintiff has the severe impairment of "degenerative joint disease of the lumbar and cervical spine."  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[1]  [AR at 44.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 416.967(b)[3], with certain limitations. Specifically, the ALJ determined:

> [plaintiff] is able to lift or carry 20 pounds occasionally, 10 pounds frequently; can stand or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can push or pull on an unlimited basis; and has no postural, manipulative, visual, communication, environmental, or non-exertional limitations.

[AR at 44-46.]  At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is "capable of performing past relevant work as an accounts payable clerk."  [AR at 46.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time since February 11, 2011.  [AR at 46-47.]

/

/

/

---

[1]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to "properly consider[ ] the evidence of a mental impairment," and (2) erred in her assessment of plaintiff's credibility.  [Joint Stipulation ("JS") at 4-8, 11-15, 19-20.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**MEDICAL RECORDS/DEVELOPMENT OF THE RECORD**

Plaintiff contends that the ALJ failed to properly consider the evidence of a mental impairment. [AR at 4-8, 11-12.] Specifically, plaintiff asserts that "the records before the ALJ were inadequate to assess the impact [of plaintiff's] mental impairments because [they] did not contain valid opinion evidence," and, as such, "[t]he ALJ had a "duty to develop the record from a mental standpoint." [JS at 7-8.]

### A.    Applicable Law

While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent, "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).   This duty extends to the represented as well as to the unrepresented claimant.  Smolen, 80 F.3d at 1288; see Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).  "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978); see also 42 U.S.C. §

1  421(h).  The ALJ has a duty to "conduct an appropriate inquiry" if the evidence is ambiguous or

2  inadequate to permit a proper evaluation of a claimant's impairments.  Smolen, 80 F.3d at 1288;

3  accord Tonapetyan, 242 F.3d at 1150.  If evidence from a medical source is inadequate to

4  determine if the claimant is disabled, an ALJ may be required to recontact the medical source,

5  including a treating physician, to determine if additional needed information is readily available.

6  See 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1); see also Webb v. Barnhart, 433 F.3d 683, 687

7  (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous

8  evidence [or] the ALJ's own finding that the record is inadequate").  The responsibility to fulfill this

9  duty belongs entirely to the ALJ; it is not part of the claimant's burden.  White v. Barnhart, 287

10  F.3d 903, 908 (10th Cir. 2001).  The ALJ may "discharge this duty in several ways, including:

11  subpoenaing the claimant's physicians, submitting questions to the claimant's physicians,

12  continuing the hearing, or keeping the record open after the hearing to allow supplementation of

13  the record."  Tonapetyan, 242 F.3d at 1150 (citing Tidwell, 161 F.3d at 602).

14

15  **B.    Evidence of Plaintiff's Mental Impairment**

16        In a Psychiatric Review Technique completed on June 2, 2011 [AR at 301-11], state agency

17  physician Dr. Paul Cherry reported that the medical evidence in the record did "not reveal the

18  presence of a psychiatric impairment," and noted that a "[r]ecent exam [in February, 2011] did not

19  diagnose a psychiatric impairment.  It appears there is no psychiatric MDI [Medically Determinable

20  Impairment]." [AR at 311.]

21        In a Physical Residual Functional Capacity Assessment completed on June 6, 2011 [AR

22  at 289-95], state agency physician Dr. Nancy Armstrong reported that plaintiff could lift ten pounds

23  frequently and twenty pounds occasionally, stand or walk about six hours in an eight-hour work

24  day, and sit for about six hours in an eight-hour work day.  [AR at 290.]  Dr. Armstrong did not

25  report that plaintiff had any postural, manipulative, visual, communicative, or environmental

26  limitations.  [AR at 291-93.]

27        In an intake form dated July 18, 2011, Olive View - UCLA Medical Center Registered Nurse

28  I. Rodriguez indicated that plaintiff had depression, and prescribed Elavil to treat that condition.

[AR at 642-43.]  The same day, Nurse Rodriguez indicated that plaintiff was a "suicide risk," and gave her the Crisis Hotline information.  [AR at 640.]

On August 22, 2011, plaintiff was referred to the mental health center at Olive View by Registered Nurse A. Mendoza.[4]  [AR at 636-37.]

On September 20, 2011, plaintiff started therapy at Genesis Mental Health Center.  [AR at 703-710.]  In her Adult Initial Assessment, Advanced Social Worker Katie Weber reported that plaintiff could take care of her basic and instrumental activities of daily living but also assigned plaintiff a GAF score of 55[5] and diagnosed her with major depressive disorder, recurrent.  [AR at 706, 710.]

In an intake form dated September 26, 2011, Olive View - UCLA Medical Center Registered Nurse E. Anas indicated that plaintiff still felt depressed, and started plaintiff on Zoloft.  [AR at 631-32.]

Plaintiff attended counseling treatments approximately twice a month from September 2011 to July 2012.  [AR at 703-44.]  Progress notes indicate that plaintiff was in a depressed mood on multiple occasions.  [AR at 744 (September 20, 2011, social worker noted that plaintiff was "sad, tearful"), 739 (October 4, 2011, social worker noted that plaintiff "feels alone"), 735 (October 19, 2011, social worker noted that plaintiff felt like she "look[ed] like a monster" and "began to cry"), 733 (November 30, 2011, social worker noted that plaintiff was "tearful and upset" and felt "scarred for life"), 727 (February 28, 2012, social worker noted that plaintiff feels "so lonely" and that she "ha[s] no one").]  Although there was a period of about two months from late 2011 through early

---

[4]   Plaintiff was referred to mental health centers two more times by registered nurses at Olive View - UCLA Medical Center, in October and November of 2011.  [See AR at 625 (October 26, 2011, plaintiff was referred to "MH" by Nurse Jae Cho), 621 (November 28, 2011, Nurse Corpus notes that plaintiff should call "MH").]

[5]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).  A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).  DSM-IV, at 34.

1  2012 when plaintiff's affect seemed improved [see, e.g., AR at 728-31 (social worker described

2  plaintiff as having a "pleasant mood" on January 11, 2012)], plaintiff again cried and expressed

3  a negative affect during her June 20, 2012, and July 9, 2012, sessions, as little as one month

4  before her ALJ hearing.  [AR at 720 (June 20, 2012, social worker noted that plaintiff "presented

5  [with] flat affect," her mood was "sad," and she "began to cry"), 719 (July 9, 2012, social worker

6  noted that plaintiff was "in a depressed mood" and "[h]ad no motivation to do anything").]

8  **C.      The ALJ's Assessment of Plaintiff's Mental Impairment**

9       In her decision, the ALJ assigned "limited weight" to Dr. Cherry's June, 2011 opinion that

10  plaintiff had "no medically determinable mental impairment" [AR at 46; see AR at 301-11], because

11  it "was formed before [plaintiff] sought mental health treatment."  [AR at 46.]  Instead, the ALJ

12  "[gave plaintiff] the benefit of the doubt in finding she has a medically determinable mental

13  impairment," but concluded that this impairment was not severe.  [AR at 43, 46.]  The ALJ found

14  that plaintiff's mental impairment was not severe because it "[did] not cause more than minimal

15  limitation in the claimant's ability to perform basic mental work activities."  [AR at 43.]  After finding

16  that the record contains "fewer than twelve months of treatment by a social worker," and further

17  finding "improvement in [plaintiff]'s mood and anxiety levels since late 2011," the ALJ concluded

18  that plaintiff's RFC for light work "is supported by Dr. Armstrong's opinion."  [Id.]

20  **D.      Analysis**

21       Under the circumstances, the ALJ failed to fully and fairly develop the record of plaintiff's

22  mental impairment for two reasons.  First, the ALJ erred because plaintiff clearly established the

23  presence of a mental impairment.   When paired with an inadequate record, this "raised a

24  suspicion" concerning plaintiff's alleged mental impairment.  See Hilliard v. Barnhart, 442 F. Supp

25  2d 813, 817 (N.D. Cal. 2006) (citing Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987) ("claimant

26  need only 'raise a suspicion' about his [mental] impairment in order to trigger the ALJ's duty to

27  develop the record")); see also Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir.1999) ("While the

28  mere presence of a mental disturbance does not automatically indicate a severe disability, it

1    cannot be ignored by the ALJ. . . . The ALJ has a duty to develop the record when there is a

2    suggestion of mental impairment by inquiring into the present status of impairment and its possible

3    effects on the claimant's ability to work.") (citations omitted).[6, 7]  Here, plaintiff alleged a mental

4    impairment in her original request for benefits.  [AR at 80-85, 166.]  In July 2011, plaintiff reported

5    feelings of depression, was prescribed Elavil, and was referred to a mental health treatment

6    facility.  Plaintiff was eventually diagnosed with a major depressive disorder at Genesis Mental

7    Health Center.  On September 26, 2011, plaintiff's use of Elavil was discontinued and she was

8    started on Zoloft.  In her Disability Report - Appeal, dated November 9, 2011, plaintiff requested

9    evaluation by a state agency physician so that the Social Security Administration would be able

10   to see the state she was in both mentally and physically.  [AR at 207.]  A suspicion regarding

11   plaintiff's mental impairment was clearly raised in this case, triggering the ALJ's duty to develop

12   the record.

13          Second, the ALJ's duty to develop was "heightened" because there was evidence indicating

14   the existence of a mental impairment.  The ALJ nevertheless failed to make "every reasonable

15   effort" to ensure that the record was sufficient.  See 42 U.S.C. § 421(h);  Perkins v. Astrue, 2009

16   WL 5066762 (C.D. Cal. Dec. 22, 2009) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th

17   Cir.1992)).  The governing statute requires that, "[a]n initial determination . . . that an individual is

18   not under a disability, in any case where there is evidence which indicates the existence of a

19

20          [6]   Although, at step two, a claimant has the burden of establishing a mental or physical
21   impairment, a claimant does not have to prove that he or she has a severe impairment in order
     to trigger the ALJ's duty to develop the record.  Hilliard, 442 F. Supp. 2d at 817, 820.  To the
22   extent that defendant argues that "the ALJ was not obligated to order a consultative examination
     when [p]laintiff's own treatment notes failed to show any mental impairment . . . [and p]laintiff failed
23   to carry her burden of demonstrating a severe mental disability" [JS at 10], defendant confuses
     the burden of proof at step two, which is on the claimant, with the separate duty of the ALJ to
24   develop the record in the event of ambiguous or inadequate evidence.  See id.

25          [7]   Once the ALJ's duty to develop the record is triggered, the ALJ can fulfill it in many ways,
26   including by ordering a consultative examination.  Smolen, 80 F.3d at 1288.  A consultative
     examination may be required "when additional information needed is not contained in the evidence
27   of your medical sources," or when "[t]here is an indication of a change in your condition that is
     likely to affect your ability to work, . . . but the current severity of your impairment is not
28   established." 20 C.F.R. § 416.919a.

1    mental impairment, shall be made only if the Commissioner of Social Security has made every

2    reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical

3    portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C.

4    § 421(h).  Here, the effort made by the ALJ was insufficient because, although a qualified

5    physician did review plaintiff's case from a mental standpoint, this review predated all of plaintiff's

6    mental health treatment.  [AR at 311]; see, e.g., Schultz v. Astrue, 362 F. App'x 634, 636 (9th Cir.

7    2010) (error for the ALJ to rely on a review by a state psychologist that preceded the onset of

8    claimant's impairment because the ALJ's subsequent RFC assessment "did not account for any

9    limitations [on functionality] posed by [plaintiff's] recognized mental impairments").  In addition, the

10   ALJ's finding that plaintiff had no limitations in activities of daily living or social functioning, and

11   mild limitations in concentration, persistence, and pace, was based solely on a Function Report

12   that also predated plaintiff's mental health treatment.  [AR at 43-44, 184-91.]  Further, to the extent

13   that the ALJ relied on plaintiff's therapy notes to support her finding of "improvement in the

14   claimant's mood and anxiety levels since late 2011" [AR at 46], the ALJ ignores the later therapy

15   notes that support an opposite conclusion.  [See, e.g., AR at 719-20]; Gallant v. Heckler, 753 F.2d

16   1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it

17   by ignoring competent evidence in the record that supports an opposite result"); Day v.

18   Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion

19   "simply by isolating a specific quantum of supporting evidence").  Finally, in November 2011,

20   plaintiff requested reevaluation by a state agency physician, suggesting that she believed her

21   record was incomplete.  [AR at 207.]  The ALJ did not grant plaintiff's request for a consultative

22   examination, did not require a medical expert to be present at the hearing, and did not submit

23   further questions to plaintiff's treating physicians.  Any of these steps may have satisfied the ALJ's

24   burden of making a reasonable effort to ensure that the residual functional capacity assessment

25   was supported by the necessary evidence.  See 42 U.S.C. § 421(h); 20 C.F.R. § 416.920b(c)(1);

26   20 C.F.R. § 416.929(b); [AR at 40-47.]  Accordingly, remand is required to enable the ALJ to

27   develop the record regarding plaintiff's mental condition and to assess whether, in light of the fully

28

1  developed record, plaintiff is able to work.[8]

2

3                                          **VI.**

4                     **REMAND FOR FURTHER PROCEEDINGS**

5          The Court has discretion to remand or reverse and award benefits.  <u>McAllister v. Sullivan</u>,

6  888 F.2d 599, 603 (9th Cir. 1989).   Where no useful purpose would be served by further

7  proceedings, or where the record has been fully developed, it is appropriate to exercise this

8  discretion to direct an immediate award of benefits.  <u>See</u>  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,

9  1041 (9th Cir. 2007); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are

10  outstanding issues that must be resolved before a determination can be made, and it is not clear

11  from the record that the ALJ would be required to find plaintiff disabled if all the evidence were

12  properly evaluated, remand is appropriate.  <u>See</u> <u>Benecke</u>, 379 F.3d at 593-96.

13          Here, there are outstanding issues that must be resolved before a final determination can

14  be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

15  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

16  proceedings.  First, remand is warranted for the ALJ to order a mental examination of plaintiff.  The

17  ALJ is instructed on remand to then reevaluate, at step two, the severity of plaintiff's mental

18  impairment in light of any evidence provided by the new examination.  Second, the ALJ shall

19  reassess plaintiff's credibility and proceed with the remainder of the five step analysis as required

20  by the new evaluation.

21

22                                          **VII.**

23                                     **CONCLUSION**

24          **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision

25  of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

26

27          [8]     As the ALJ's duty on remand to obtain a mental examination of plaintiff may have an
28  impact on the credibility issue raised by plaintiff in the Joint Stipulation, the Court exercises its
   discretion not to address that issue in this Order.

proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 15, 2014

_____
                        PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE